# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2026

Lyle W. Cayce
Clerk

No. 25-40508

_____

Amberley Lambert, *Individually and as next friend of* K.M. and N.M., *minors*,

*Plaintiff—Appellant*,

*versus*

City of Onalaska, Texas; Tammie Heeth, *Officer*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:23-CV-67

_____

Before Jones, Clement, and Richman, *Circuit Judges*.

Per Curiam:[*]

This case arises from a dispute between a parent and a school resource officer at an elementary school drop-off that led to the parent's arrest. The parent, Amberley Lambert, sued the officer, Tammie Heeth, and the City of Onalaska under 42 U.S.C. § 1983, alleging that Officer Heeth violated her rights under the First and Fourth Amendments. The district court granted

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

summary judgment to Officer Heeth and the City, determining that Officer Heeth is entitled to qualified immunity because Lambert has not shown a constitutional violation. We AFFIRM.

## I

## A

As the school resource officer for Onalaska Elementary School in Onalaska, Texas, Officer Heeth directed traffic as parents dropped their children off at school. Parents arriving on time would drive down Gantry Street to drop their children off at the back entrance of the school. After the "tardy bell" rang at 7:45 a.m., Officer Heeth would redirect parents down Old Trinity Road to drop their children off at the school's front entrance.

When Lambert ran late in the mornings, she disregarded this procedure and took the route reserved for parents who were on time. On several occasions, Officer Heeth tried to stop Lambert to explain the proper route, but Lambert ignored her.

One morning, Lambert complained to the school's assistant principal about Officer Heeth. Lambert believed that Officer Heeth "didn't like her" and would arbitrarily make her take the late route when she allowed the car immediately in front of Lambert's to drop off at the back entrance.

Two days later, Officer Heeth was directing morning traffic. The tardy bell had rung, and she had already redirected three cars to take the late route to the front of the school. About five minutes after the bell rang, Officer Heeth saw Lambert's maroon Hummer driving down South Farm to Market Road 356. As the assistant principal had explained to Lambert two days prior, parents were never supposed to take this route—whether or not they were on time—"for pedestrian safety reasons." Officer Heeth motioned for Lambert to turn around by raising her left hand with her palm toward

Lambert and using her index finger to "make a 'U' motion." Lambert stopped for a few seconds, and Officer Heeth started walking toward her vehicle. While Officer Heeth was approaching the vehicle, Lambert started driving toward Heeth.

The parties dispute what happened next. Lambert says she thought Officer Heeth had directed her to keep driving, and as she drove past Officer Heeth at a "creeping" pace, Officer Heeth reached out and hit Lambert's vehicle with her hand. When Lambert rolled down her window to ask what was happening, Officer Heeth told her she was under arrest. Lambert declined to get out of the vehicle, so Officer Heeth climbed onto the running board of her car, grabbed her by the hair, and tried to pull her out through the window. Lambert's foot slipped off the brake, causing the vehicle to move while Officer Heeth was still on the running board. Lambert called the police dispatcher and asked for another officer to intervene because she was scared of Officer Heeth.

Officer Heeth tells a different story. According to her, while she was walking toward Lambert's vehicle, Lambert hit her with her car. Officer Heeth rolled to the driver's side of the vehicle, hit it with her hand to get Lambert to stop, and told Lambert through the vehicle's open window to get out of the car. When Lambert refused, Officer Heeth climbed onto the running board to open the locked car door from the inside. She opened the door and again ordered Lambert to step out of the car, but Lambert again refused. Officer Heeth grabbed Lambert—first by the arm, then by the rear of her neck—to try to remove her from the vehicle, but Lambert would not move. By this point, the car was stopped, the keys had been removed from the ignition, and Lambert's children were crying in the backseat, so Officer Heeth decided not to escalate the situation and instead waited for another officer to arrive.

Soon after, the police chief and fire marshal arrived. The fire marshal told Lambert to exit the vehicle, and she complied. Lambert was taken to the police station, where she was charged with aggravated assault of a public servant and resisting arrest. Over two years later, the State of Texas moved to dismiss the assault charge for insufficient evidence, and a jury acquitted Lambert of the resisting arrest charge.

B

Lambert sued Officer Heeth and the City under § 1983, alleging violations of her First and Fourth Amendment rights. Lambert alleged that Officer Heeth violated the Fourth Amendment by stopping her vehicle and arresting her without justification, and she alleged that Officer Heeth violated the First Amendment by arresting her as retaliation for complaining to the assistant principal. Lambert alleged that the City was liable for ratifying and encouraging Officer Heeth's conduct.

Officer Heeth and the City moved for summary judgment, arguing, in part, that Officer Heeth is entitled to qualified immunity. A magistrate judge recommended that the district court grant the motion, reasoning that Officer Heeth did not violate the Fourth Amendment because she had reasonable suspicion to stop Lambert for disobeying her lawful order and probable cause to arrest her for aggravated assault of a public servant. The magistrate judge further reasoned that Lambert's retaliatory arrest claim should fail because Officer Heeth had probable cause to arrest her, and Lambert did not produce objective evidence that similarly situated parents who had not complained about Officer Heeth had not been arrested. Lastly, the magistrate judge recommended granting summary judgment to the City because Lambert failed to establish any underlying constitutional violation.

The district court adopted the magistrate judge's report and recommendation in its entirety over Lambert's objections. Lambert timely appealed.

## II

We review a grant of summary judgment de novo, applying the same standard as the district court. *Aguirre v. City of San Antonio*, 995 F.3d 395, 405–06 (5th Cir. 2021). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020).

A good-faith assertion of qualified immunity "alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Still, we continue to draw all inferences in the plaintiff's favor. *Id.*

## III

On appeal, Lambert argues that the district court erred by granting summary judgment on both of her constitutional claims because she demonstrated that Officer Heeth violated her clearly established rights under

No. 25-40508

the First and Fourth Amendments.[1] We take up both issues in turn, starting with Lambert's Fourth Amendment claim.

A

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. Lambert contends that Officer Heeth twice violated this proscription: first by striking her vehicle with her hand, then by arresting her without probable cause.

Lambert is correct that Officer Heeth twice seized her. It is undisputed that Officer Heeth hit Lambert's vehicle with her hand as Lambert drove past her. This use of physical force demonstrated an objective intent to stop Lambert's vehicle, so it constituted a seizure. *See United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) ("The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment."). Moreover, it is undisputed that Officer Heeth's arrest of Lambert was a seizure. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018).

---

[1] Lambert also argues that the district court misapplied the summary judgment standard by viewing the facts in the light most favorable to the movants and drawing certain inferences in their favor. Lambert raises various factual issues, but she fails to explain how these issues compel reversal. *See Sauceda v. City of San Benito*, 78 F.4th 174, 182 (5th Cir. 2023) ("On appellate review of an order granting or denying summary judgment, this court will reverse only if the error affects substantial rights." (cleaned up)); *see also* FED. R. CIV. P. 61.

That said, Lambert is correct that the district court erroneously determined that there is no genuine dispute that Lambert hit Officer Heeth with her vehicle. Lambert has consistently testified that she never hit Officer Heeth, and she has produced competent summary judgment evidence of this testimony. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (explaining that "self-serving evidence" can be "sufficient to create a genuine issue of material fact"). Thus, when conducting the qualified immunity analysis, we will draw the inference in Lambert's favor and assume that she never hit Officer Heeth with her vehicle.

To comport with the Fourth Amendment, a seizure "must be reasonable under the circumstances." *Id.* Officer Heeth's initial stop of Lambert's vehicle amounted to a traffic stop, which must be "justified by probable cause or a reasonable suspicion of a violation." *Brigham*, 382 F.3d at 506. Officer Heeth's warrantless arrest of Lambert was lawful under the Fourth Amendment if she had probable cause to believe that Lambert "committed even a very minor criminal offense in [her] presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

We conclude that Officer Heeth had probable cause to both stop and arrest Lambert. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc) (per curiam). In Texas, it is a misdemeanor offense to "willfully fail or refuse to comply with a lawful order or direction of a police officer." Tex. Transp. Code Ann. § 542.501(1). Here, it is undisputed that as Lambert was driving down the wrong route to drop off her children, Officer Heeth signaled for her to stop and turn around. Lambert stopped for a few seconds, but as Officer Heeth approached her vehicle, Lambert continued driving toward her.

Given these facts, a reasonable officer would have concluded that Lambert was violating § 542.501 when she continued driving after Officer Heeth ordered her to stop and turn around. Lambert argues that she misunderstood Officer Heeth's hand signal, but her subjective understanding is irrelevant to our probable cause analysis. Looking to the information available to Officer Heeth, she observed a driver who ignored the same signal that Officer Heeth had given to three other drivers minutes before. It was reasonable for an officer in her shoes to conclude that Lambert

7

failed or refused to comply with her lawful direction, so Officer Heeth had probable cause to stop Lambert's car and arrest her.[2]

Further, while Lambert's failure to comply with Officer Heeth's lawful order furnished probable cause to initiate the arrest, Lambert's resisting arrest supplied additional probable cause. Under Texas law, a person resists arrest if she "intentionally prevents or obstructs a person [s]he knows is a peace officer . . . from effecting an arrest . . . by using force against the peace officer." TEX. PENAL CODE ANN. § 38.03(a). "The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (collecting cases). Lambert testified that when Officer Heeth tried to pull her out of her vehicle, Lambert "tense[d her] body up" to prevent Officer Heeth from pulling her out of the vehicle. Given this resistance, a reasonable officer could have concluded that Lambert was resisting arrest. *See id.*; *see also Benfer v. City of Baytown*, 120 F.4th 1272, 1281 (5th Cir. 2024) (concluding that an arrestee's "repeatedly pulling out of [an officer's] grasp" supplied probable cause to arrest him for resisting arrest), *cert. denied*, 145 S. Ct. 1313 (2025). Thus, Officer Heeth had probable cause to arrest Lambert for failing to comply with a lawful direction *and* resisting arrest.

Lambert argues that, under *Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023), Officer Heeth did not have probable cause to arrest Lambert

---

[2] It is no matter that Lambert was not charged with violating § 542.501 following her arrest. An officer's state of mind "is irrelevant to the existence of probable cause," so her "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Because the facts known to Officer Heeth would have led a reasonable officer to believe that Lambert was violating § 542.501, Officer Heeth had probable cause to arrest Lambert for violating that provision even though she was not charged with that offense.

for resisting arrest because Officer Heeth "made an unlawful arrest *before* [Lambert's] resistance." *Id.* at 187. In *Sauceda*, we held that an officer may not initiate an arrest without probable cause, even if that "unlawful arrest becomes lawful moments later by virtue of the arrestee's resistance." *Id.* at 188. But here, Officer Heeth lawfully initiated the arrest because she had probable cause to believe that Lambert was failing or refusing to comply with her lawful direction. Thus, Officer Heeth already had probable cause to arrest Lambert *before* Lambert started resisting. Her resistance merely furnished additional probable cause for the arrest.

Because Officer Heeth had probable cause to stop Lambert's vehicle and arrest her, Lambert has not shown that Officer Heeth violated the Fourth Amendment. The district court properly granted summary judgment to Officer Heeth as to Lambert's Fourth Amendment claim.

B

Turning to Lambert's First Amendment retaliation claim, she contends that Officer Heeth arrested her because she complained to the assistant principal about Officer Heeth two days before her arrest.

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions"—including arrests—"for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). In general, the two-step framework from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), governs First Amendment retaliation claims: The plaintiff must first show that retaliation was a substantial or motivating factor behind the official's action. *Id.* at 287. The burden then shifts to the defendant to show that she would have taken the same action "even in the absence of the protected conduct." *Id.*

For retaliatory arrest claims, before getting to the *Mt. Healthy* test, the plaintiff first "must plead and prove the absence of probable cause for the

arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). This requirement addresses the fact that for retaliatory arrest claims, "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct." *Id.*

But while "probable cause should generally defeat a retaliatory arrest claim," the Supreme Court has recognized "a narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. Under this exception, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. The Court offered jaywalking as an example: Because, "at many intersections, jaywalking is endemic but rarely results in arrest," an individual could satisfy the *Nieves* exception if she "has been vocally complaining about police conduct" and "is arrested for jaywalking at such an intersection." *Id.*

This "exception is slim," but it does not demand "virtually identical and identifiable comparators." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (per curiam). The only express limit on the sort of evidence a plaintiff may present to satisfy this exception "is that it must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard.'" *Id.* (quoting *Nieves*, 587 U.S. at 407).

Here, Officer Heeth had probable cause to arrest Lambert, so Lambert must satisfy the *Nieves* exception to make out a retaliatory arrest claim. Attempting to do so, Lambert points to Officer Heeth's admission that Lambert is the only person Officer Heeth has arrested for disregarding the school drop-off route or her traffic direction. Lambert asserts that the timing of the arrest—two days after she complained to the assistant principal—

further supports an inference that retaliation was a motivating factor for her arrest.

Lambert has not produced sufficient evidence to satisfy the *Nieves* exception. She does not need to identify a "virtually identical" comparator, *id.*, but she has failed to identify *any* similarly situated individual who engaged in conduct like hers. Lambert's conduct is a far cry from the jaywalking contemplated by the *Nieves* Court. *See* 587 U.S. at 407. It is neither endemic nor benign conduct to drive at a police officer after receiving a lawful order to stop and turn around. Where, as here, "a plaintiff's claim hinges on negative evidence, . . . context is key for determining the strength of [her] case." *Gonzalez*, 602 U.S. at 668 (Alito, J., concurring). In light of the novelty of Lambert's conduct, "the lack of similar arrests . . . warrant[s] little weight." *Id.*

Moreover, Lambert's timing evidence is irrelevant to the *Nieves* exception. That kind of evidence is relevant to the *Mt. Healthy* test, but we may reach that analysis only after the plaintiff satisfies the *Nieves* exception. *See id.* at 667. "Any other approach would render the *Mt. Healthy* framework redundant in most, if not all, cases." *Id.*

Lambert has not produced objective evidence that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. Thus, the existence of probable cause defeats her retaliatory arrest claim, and the district court properly granted summary judgment to Officer Heeth on this claim.

## IV

Because Officer Heeth did not violate Lambert's rights under the First or Fourth Amendments, she is entitled to qualified immunity. Accordingly, we AFFIRM the district court's grant of summary judgment.